IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JASON WAYNE HACHMEISTER,

              Plaintiff,

        v.                          CASE NO.  13-3205-SAC

CHADWICK TAYLOR,
Shawnee County District
Attorney, et al.,

              Defendants.


<u>MEMORANDUM AND ORDER</u>

        This matter was filed pro se as a civil rights complaint pursuant

to 42 U.S.C. § 1983 by an inmate of the Shawnee County Jail, Topeka,

Kansas.  Mr. Hachmeister sues various Topeka Police Department (TPD)

officers based upon their actions during searches and seizures that

resulted in state criminal charges being brought against him.  He

also sues the District Attorney prosecuting his criminal case.  The

relief sought includes an injunction prohibiting the State from

proceeding with the criminal prosecution and money damages.  Having

considered all materials filed, the court finds that plaintiff has

not satisfied the statutory filing fee prerequisite and fails to

allege facts that would justify this federal court's intervention

in ongoing state criminal proceedings, and that his damages claims

are barred by *Heck*.  Plaintiff is given time to satisfy the filing

fee and to show cause why this action should not be dismissed for

1

the reasons discussed herein.[1]

## FILING FEE

Plaintiff has filed a Motion for Leave to Proceed without Prepayment of Fees (Doc. 2), but his motion is incomplete. 28 U.S.C. § 1915 requires that a prisoner seeking to bring a civil action without fees submit a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing" of the action "obtained from the appropriate official." 28 U.S.C. § 1915(a)(2). The "Work with Fund Ledger" provided by plaintiff is for 5 rather than 6 months, is not certified, and includes no monthly balances. He is given time to provide the financial information required by federal law, and warned that if he fails to comply within the prescribed time, this action may be dismissed without further notice.

Furthermore, § 1915(b)(1) requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposit or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing

---

[1]    If dismissed, this action will count as a strike against Mr. Hachmeister under 28 U.S.C. § 1915(g), which provides:

        In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court that is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

of the civil action. The court will determine an appropriate partial fee once the requisite financial information is received.

Plaintiff is reminded that under § 1915(b)(1), being granted leave to proceed without prepayment of fees will not relieve him of the obligation to pay the full fee. Instead, it entitles him to pay the fee over time through payments automatically deducted from his inmate trust fund account.[2]


**ALLEGATIONS AND CLAIMS**

Plaintiff alleges the following in his complaint and motion for immediate injunctive relief. On September 10, 2011, he discovered the body of his mother in her home that they shared. He put his Gateway laptop computer on the kitchen table to pick up the phone and call 911. The TPD took his Gateway computer that day without probable cause. However, this computer was not searched until December.

On December 6, 2011, after Mr. Hachmeister became a suspect in his mother's murder, "TPD obtained an illegal search warrant" to search plaintiff's home and car that was authorized by defendant Spradling. This warrant did not meet the "4th Amendment particularity requirement" in that it was "too general" and

---

2    Pursuant to § 1915(b)(2), the Finance Office of the facility where plaintiff is confined will be authorized to collect twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full.

improperly authorized a search for evidence without listing a crime or statute. That day it was used to seize "computers and data storage devices" from plaintiff's home, including plaintiff's Lenovo laptop computer, which was on the inventory. It was also used to "seize" plaintiff's Gateway computer taken by TPD in September 2011. Plaintiff never gave TPD authority to search his Gateway computer. Defendant Detective Dickey was the affiant on this warrant and affidavit and executed the warrant at plaintiff's residence. Pursuant to this warrant, defendant Detective Arensdorf executed an unlawful search and seizure of plaintiff's auto and person.

On December 13, 2011, TPD "got a warrant to search these illegally seized items." The scope of this warrant was for homicide evidence only. With this warrant, the TPD searched plaintiff's Gateway computer and allegedly found child pornography terms and images.[3] Defendant Detective Gifford exceeded the scope of this warrant "when he found child porn terms." Gifford testified at a hearing that when he searched the computer with a filter for terms related to the homicide he "found" terms indicative of child porn. Defendant Winkelman assisted Gifford in this search. "They" used the evidence from this illegal search to criminally charge plaintiff and to slander his name "in order to taint the homicide jury pool." "TPD then used the 'fruits' of 3 illegal searches and seizures . .

---

3    Statements were made in an affidavit that the child exploitation evidence was found on the Lenovo computer, when it was actually found on the Gateway.  The confusion was discussed at the preliminary hearing.

. to obtain a 4th warrant (Jan 4, 2012) which finally gave them a proper warrant," but "one predicated upon 3 illegalities."

Defendant District Attorney Taylor's indifference, tacit approval, or failure to train and supervise led to defendant Spradling authorizing the "obviously unconstitutional" December 6 warrant. The judge in Case No. 12-CR-471 said the warrants looked proper and denied Mr. Hachmeister's motion to suppress without findings of fact or conclusions of law.

As Count I, plaintiff claims violation of his constitutional right to be free from unreasonable searches and seizures. As factual support for this claim, he refers to the allegedly illegal searches and seizures that resulted from the two December 2011 warrants. As Count II, plaintiff claims violation of his right to due process, likewise based upon the two December warrants. As Count III, plaintiff claims "conspiracy to violate civil rights." In support, he alleges that defendants Spradling, Dickey, Arensdorf, Gifford and Winkelman agreed to commit a crime in that they knowingly either authorized the "general warrant" or exceeded the scope of the other. As Count IV, plaintiff claims "invasion of privacy." In support, he alleges that defendants Dickey and Arensdorf used the overbroad Dec. 6 warrant to enter his residence or automobile and that defendants Gifford and Winkelman exceeded the scope of the Dec. 13 warrant by searching for child pornography terms. As Count V, plaintiff claims "trespass" and again alleges that Dickey and

Arensdorf used the overbroad Dec. 6 warrant to enter his home and automobile. As Count VI, plaintiff claims "intentional infliction of emotional distress." In support of this count, he alleges that on October 4, 2011, he told Dickey he did not like cops and knew three women were quitting the D.A.'s office due to sexual harassment. He also alleges that the overbroad Dec. 6 warrant was "intentionally" authorized by the "DA's office" to obtain "anything to nail" him, to slander him, and to damage his personal relationships because the homicide case is "extremely circumstantial." As Count VII, plaintiff claims "wrongful arrest." In support, he alleges that defendant Arensdorf seized his person on Dec. 6 pursuant to the "unlawful general warrant," and that his arrest on March 19, 2012 on charges in Case No. 12-CR-471 resulted from "government illegal actions." As Count VIII, plaintiff claims "wrongful imprisonment." In support, he alleges that he was imprisoned from March 2012 through November 2013 as the result of illegal acts taken by the D.A.'s office and the TPD in connection with the two December warrants. As Count IX, plaintiff claims "malicious or wrongful prosecution." In support, he alleges that the Dec. 6 warrant did not authorize seizure of any objects not located at Hachmeister's residence on that date, and that defendant Taylor is prosecuting charges that were "not under investigation" until the Dec. 6 warrant was used to "reseize" his computer already held in TPD lock-up. He further alleges that Taylor knew the Dec. 6 warrant was unconstitutionally overbroad and that

the scope of the Dec. 13 warrant was exceeded, but cared only about headlines and tainting the jury pool for the homicide case, and that Taylor's prosecution of case No. 12-CR-471 is in bad faith. As Count X, plaintiff claims "slander." In support, he repeats that defendant Taylor and TPD knew the first warrant was unconstitutional and that the scope of the second warrant was exceeded. He also alleges that "all defendants" know that if plaintiff is convicted in Case No. 12-CR-471, his convictions "will never stand on appeal" due to "illegal evidence." In addition, he alleges that the D.A. and TPD only want to "besmirch" his name and reputation, destroy his familial relationships and friendships, and "paint him as a monster who is capable not only of matricide but a sexual pervert to boot" in order to "taint the jury pool" in the homicide case.

Plaintiff filed a motion to suppress in his criminal case that was heard and denied. He was found guilty of over 100 counts of child exploitation in Case No. 12-CR-471.

The relief sought by Mr. Hachmeister in his complaint is "an immediate temporary restraining order and/or injunctive relief prohibiting the State from proceeding with the prosecution" of Case No. 12-CR-471; the return of "all objects, information, or evidence" obtained with the two December 2011 warrants;[4] and "compensatory and

---

4    Plaintiff does not allege facts suggesting that he has a right to the return of any particular seized property, that the State no longer has a right to retain trial evidence, or that he has sought the return of any seized property through appropriate state channels or under state law.

punitive damages as a result of defendants illegal actions."  In his "Motion for Temporary Restraining Order and/or Injunctive Relief" (Doc. 3) plaintiff asks the court to order the return of "all contents of subsequent computer searches . . . or evidence derived therefrom" and "all items listed" on the Dec. 6, 2011 warrant, to prohibit the use of those items as evidence in "either Case No. 12-CR-471 or Case No. 11-CR-2178,"[5] and "to order the State to drop its wrongful prosecution of Case #12-CR-471 immediately."  Plaintiff sues all law enforcement officers in their individual and official capacities.[6]

**SCREENING**

Because Mr. Hachmeister is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake,* 469 F.3d 910, 913 (10th Cir. 2006).  However, a

---

5    Plaintiff is charged in Shawnee County with the murder of his mother in Case No. 11-CR-2178.

6    A suit for damages against a state employee acting in his or her official capacity is in essence a suit against the State and is therefore barred by sovereign immunity.

pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Its "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570. This court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Having applied these standards to the complaint filed herein, the court finds it is subject to being dismissed for the reasons that follow.

**YOUNGER ABSTENTION**

In his complaint, Mr. Hachmeister asked this federal court to intervene in ongoing state criminal proceedings including his trial scheduled in Shawnee County District Court. The court has no difficulty finding that it is prohibited from doing so under *Younger v. Harris*, 401 U.S. 37, 45 (1971). "The Younger doctrine requires a federal court to abstain from hearing a case where . . . (1) state judicial proceedings are ongoing; (2) [that] implicate an important state interest; and (3) the state proceedings offer an adequate

opportunity to litigate federal constitutional issues." *Buck v. Myers*, 244 Fed.Appx. 193, 197 (10th Cir. 2007)(unpublished)[7](citing *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003)); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). "Once these three conditions are met, *Younger* abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Buck,* 244 Fed.Appx. at 197 (*citing Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)); *Seneca-Cayuga Tribe of Oklahoma v. State of Oklahoma ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989). The *Younger* doctrine is based "on notions of comity and federalism, which require that federal courts respect state functions and the independent operation of state legal systems." *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997)(citing *Younger*, 401 U.S. at 44-45). "The classic example of" the *Younger* doctrine "is a federal suit to enjoin a pending state criminal proceeding." *D.L. v. Unified Sch. Dist. No. 497*, 392 F .3d 1223, 1227-28 (10th Cir. 2004)(citations omitted).

Applying the *Younger* analysis to this case, the court finds that the first condition is clearly met because there are ongoing state criminal proceedings. At the time the complaint was filed, a suppression hearing had been held and Mr. Hachmeister's trial on state charges was scheduled to begin in a matter of days. Since the

---

7    Unpublished opinions are cited herein for persuasive value only and not as binding precedent.  See Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

filing of the complaint, plaintiff has been tried and found guilty on numerous counts.[8]  The second condition is met because Kansas undoubtedly has an important interest in enforcing its criminal laws through criminal proceedings in the state's courts.  *In re Troff*, 488 F.3d 1237, 1240 (10th Cir. 2007)("[S]tate control over criminal justice [is] a lynchpin in the unique balance of interests" described as "Our Federalism.")(*citing Younger*, 401 U.S. at 44).  The third condition is met because the Kansas courts provide plaintiff with an adequate forum to litigate his constitutional claims by way of pretrial proceedings, trial, and direct appeal after conviction and sentence, as well as post-conviction remedies.  *See Capps v. Sullivan*, 13 F.3d 350, 354 n. 2 (10th Cir. 1993)("[F]ederal courts should abstain from the exercise of . . . jurisdiction if the issues raised . . . may be resolved either by trial on the merits in state court or by other (available) state procedures.")(quotation omitted).  Plaintiff's bald statement, that he "attempted to present" his federal claims "in state-court proceedings and they have been wrongfully rejected," is not sufficient to establish that the state forum is inadequate.  *See Robb v. Connolly*, 111 U.S. 624, 637 (1884)(A state court is presumed to be capable of fulfilling its "solemn responsibility . . . 'to guard, enforce, and protect every right granted or secured by the constitution of the United States

---

8    It follows that to the extent plaintiff specifically seeks to enjoin his criminal prosecution in Case No. 12-CR-471, his request is moot.

. . . .'"); *Steffel v. Thompson*, 415 U.S.452, 460—461 (1974).

"It is the plaintiff's heavy burden to overcome the bar of *Younger* abstention." *Phelps*, 122 F.3d at 889. Nothing in the complaint or accompanying motion suggests that extraordinary circumstances exist in this case, which would allow this court to interfere in the ongoing state proceedings. Mr. Hachmeister claims that he has suffered "irreparable injury" to his name, reputation, and freedom as well as "loss of property, reputation, friendships," and that he is facing years of imprisonment. However, these baldly-alleged injuries are "incident to every criminal proceeding brought lawfully and in good faith," and thus common rather than extraordinary circumstances. *See Gauntlett v. Cunningham*, 171 Fed.Appx. 711 (10th Cir. 2006)(citing *Younger*, 401 U.S. at 49). Plaintiff's allegations that his constitutional rights have been "egregiously violated" and "trampled on" and his speculative remarks regarding the motivations of the prosecutor are nothing more than conclusory statements. The complaint is devoid of facts suggesting that Kansas officials undertook the prosecution of Mr. Hachmeister other than in a good-faith attempt to enforce the State's criminal laws.

The court finds that the three conditions for *Younger* abstention are met and that the abstention doctrine applies to the

forms of relief sought in this case.[9]  Consequently, this court must

abstain from hearing plaintiff's claims in this action.  The court

concludes that this civil action is subject to being dismissed

without prejudice based on the *Younger* abstention doctrine.  *See*

*Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)("Younger v. Harris

contemplates the outright dismissal of the federal suit . . .").


## CLAIMS BARRED BY HECK

The court also finds that Mr. Hachmeister's claims are subject

to dismissal as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  In

*Heck*, the United States Supreme Court held:

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for other
> harm caused by actions whose unlawfulness would render a
> conviction or sentence invalid, a § 1983 plaintiff must
> prove that the conviction or sentence has been reversed
> on direct appeal, expunged by executive order, declared
> invalid by a state tribunal . . . .  A claim for damages
> bearing that relationship to a conviction or sentence that
> has not been so invalidated is not cognizable under §
> 1983.").

*Heck,* 512 U.S. at 486-7.  Thus, when a plaintiff has filed a civil

rights action in a federal district court after having been convicted

in state court,

the district court must consider whether a judgment in

---

9     Even though the original *Younger* holding was applied to a claim for
injunctive relief, the Tenth Circuit has expanded the doctrine to include monetary
relief.  *Unified Sch. Dist. No. 49*7, 392 F.3d at 1228 ("[T]he Younger doctrine
extends to federal claims for monetary relief when a judgment for the plaintiff
would have preclusive effects on a pending state-court proceeding.")(citations
omitted); *see also Parkhurst v. State of Wyoming*, 641 F.2d 775, 777 (10th Cir.
1981)(claim for money damages "would necessarily call into question the validity
of the state conviction" and "frustrate the spirit" of *Younger*).

13

> favor of the plaintiff would necessarily imply the
> invalidity of his conviction . . . ; if it would, the
> complaint must be dismissed unless the plaintiff can
> demonstrate that the conviction . . . has already been
> invalidated.

*Id.* at 487.

Plaintiff seeks to establish in this civil rights action that the searches and seizures that took place during investigations of the state criminal charges against him were without probable cause and unconstitutional and that all incriminating evidence found was inadmissible. In the first three counts of his complaint, he claims unreasonable searches and seizures, violation of due process in connection with illegal warrants, and conspiracy to violate his civil rights by use of illegal warrants. This court has no doubt that a judgment in plaintiff's favor on any of these counts would imply the invalidity of his recent state criminal convictions. [10] Plaintiff's own descriptions of his claims fall squarely within the rule and

---

[10] For example, a judgment in favor of plaintiff on his conspiracy claim under § 1983, which includes allegations that defendants conspired to commit unlawful acts in the course of obtaining and executing warrants, would necessarily imply the invalidity of his convictions. *See Heck*, 512 U.S. at 487, 490 (affirming dismissal of § 1983 claim alleging unlawful acts by investigators and prosecutors because judgment in favor of plaintiff would necessarily imply the invalidity of his convictions); *Higgins v. City of Tulsa*, 103 Fed.Appx. 648, 650 (10th Cir. 2004)(unpublished)(§ 1983 claim that defendants conspired to fabricate incriminating evidence in order to convict plaintiff barred by *Heck* because convictions not invalidated); *Quarterman v. Crank*, 221 F.3d 1352, *1 (10th Cir. July 6, 2000)(Table)(affirming district court's dismissal under *Heck* of plaintiff's claims that defendants conducted illegal searches and seizures, planted evidence, entrapped and prosecuted her).

Furthermore, plaintiff's conspiracy claim fails because it does not contain specific allegations of fact "showing agreement and concerted action among" the defendants. *Hung v. Bennett*, 17 F.3d 1263, 1266 (10th Cir.), *cert. denied*, 513 U.S. 832 (1994); *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989)(Conclusory allegations of conspiracy are insufficient to state a valid 1983 claim.").

rationale of *Heck*.  Throughout his pleadings and all his counts, he repeatedly complains that he is being prosecuted with illegal evidence.[11]  He clearly attributes discovery of all the evidence that led to his child exploitation charges to the searches and seizures that he claims were unconstitutional.  *See Johnson*, 411 Fed.Appx. at 198 (citing *see United States v. Jarvi*, 531 F.3d 1256, 1260 (10th Cir. 2008)).  Mr. Hachmeister does not allege that he has obtained a favorable termination of his convictions.  As a result, these counts are subject to being dismissed without prejudice for failure to state a claim upon which relief may be granted.  *See Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996)("When a § 1983 claim is dismissed under *Heck*, the dismissal should be without prejudice."); *King v. Stephens County Sheriff*, 2007 WL 295449 (W.D. Okla. 2007).

Having considered each of plaintiff's remaining counts, the court finds that to the extent they are presented as federal constitutional claims they are barred by *Heck*, and to the extent they are state law tort claims, they present no grounds for relief under

---

11     *Heck* does not automatically bar all claims of illegal search and seizure. *See Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 557-59 (10th Cir. 1999)(rejecting a blanket application of *Heck* and noting that *Heck* did not automatically bar the plaintiff's claims of unreasonable search and seizure because ultimate success on those claims would not necessarily imply the invalidity of plaintiff's conviction for rape).  However, where all the evidence against the plaintiff was allegedly obtained as a result of illegal searches and seizures, the *Heck* bar applies because such a claim necessarily implies the invalidity of the convictions.  *See Trusdale v. Bell*, 85 Fed.Appx. 691, 693 (10th Cir. 2003)(unpublished)(concluding *Heck* barred prisoner's § 1983 claims because court was faced with a rare situation where all of the evidence obtained was the result of the execution of an allegedly invalid no-knock search warrant).

§ 1983.  Each of these counts is clearly based upon the "same factual predicate" as plaintiff's claims of unconstitutional searches and seizures.  *See Johnson v. Pottawotomie Tribal Police Dept.*, 411 Fed.Appx. 198, 199 (10TH Cir. 2011)(unpublished)(claims barred by *Heck* because "[a]n aspect of each of (plaintiff's) specific claims necessarily implies the invalidity" of his convictions.).  In Counts IV through X, plaintiff claims that acts by defendants leading to or resulting from the same allegedly-illegal searches and seizures resulted in invasion of privacy, trespass, intentional infliction of emotional distress, wrongful arrest, wrongful detention, wrongful prosecution, and slander.  The court briefly discusses each of these claims.

In Count IV, plaintiff claims invasion of privacy based on his allegations that defendants' entry into his residence and searches of his computers were unlawful because they were pursuant to the challenged issuance and execution of certain warrants.  No separate facts are alleged that distinguish this claim from plaintiff's Fourth Amendment claims regarding searches and seizures.  Furthermore, unfavorable rulings in the suppression hearing and the jury's guilty verdicts at Mr. Hachmeister's trial established probable cause for the challenged entry and searches.  In addition, since entry was admittedly pursuant to a warrant, plaintiff's expectation of privacy was accommodated.

Plaintiff's claim of trespass in Count V is likewise based upon

the same facts as his claims of unconstitutional searches and seizures with no additional facts pled to present a distinct claim of trespass.

Plaintiff's claim of intentional infliction of emotional distress in Count VI is also based on his repeated allegations that an unconstitutional warrant was "intentionally" authorized. Plaintiff adds allegations that the illegal warrant was issued to nail him, slander him, damage his relationships, and because he criticized the D.A.'s office and cops during interrogation. To the extent plaintiff is claiming that defendants acted vindictively in issuing warrants, a favorable determination could call into question the validity of his convictions. In any event, the claim of intentional infliction of emotional distress is a state tort claim and is not grounds for relief under § 1983. *See e.g. Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 855-856 (10th Cir. 2005)(applying state law for the elements of an intentional infliction of emotional distress claim under FTCA and *Bivens*); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1218 (10th Cir 2003)(claim for intentional infliction of emotional distress addressed with "state common law claims."); *Singer v. Wadman*, 595 F.Supp. 188, 300 (D.Utah 1982)("there is no constitutional right to be free from intentional infliction of emotion harm").

Plaintiff's claims of wrongful arrest, wrongful imprisonment,

and malicious prosecution,[12] if constitutional and based as they are on his allegations of illegal searches and seizures, turn on the issue of whether or not probable cause existed. *See Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006). Therefore, a judgment in favor of plaintiff on any of these claims would necessarily imply the invalidity of his recent convictions, and they are barred by *Heck*. *See Burden v. Wood*, 200 Fed.Appx. 806, 807-808 (10th Cir. 2006)(unpublished)(affirming dismissal pursuant to *Heck* of § 1983 claim alleging false arrest where plaintiff failed to show his conviction was overturned); *Wheeler v. Scarafiotti*, 85 Fed.Appx. 696, 700 (10th Cir. 2004)(unpublished)("attempt to convince a jury that the officers falsified the very reports that led to [plaintiff's] conviction would cast doubt on that conviction," so that malicious prosecution claim must be dismissed under *Heck*); *Duamutef v. Morris*, 956 F.Supp. 1112 (S.D.N.Y. 1997)(dismissing §

_____

12    The Tenth Circuit has set forth the elements of a § 1983 malicious prosecution claim:

> 1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011)(citing *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007)); *Robinson v. Maruffi*, 895 F.2d 649, 654-55 (10th Cir. 1990)(A cause of action for malicious prosecution accrues only when the underlying criminal proceeding terminates in plaintiff's favor.). A judgment in favor of plaintiff on this claim, including allegations that the prosecutor knew the warrants were illegal, cared only about headlines and tainting the jury pool for the murder case, and otherwise acted in bad faith, would necessarily imply the invalidity of his convictions. *See Baldwin v. O'Connor*, 466 Fed.Appx. 717, 717-718 (10th Cir. 2012)(unpublished)(affirming dismissal pursuant to *Heck* of § 1983 claim alleging prosecutorial misconduct, among other things, in that such a claim would necessarily imply the invalidity of the plaintiff's convictions).

1983 claims of malicious prosecution, false arrest, perjury, First Amendment retaliation, and equal protection for failure to satisfy *Heck*). Plaintiff's convictions by a jury plainly established probable cause. *See Gouskos v. Griffith*, 122 Fed.Appx. 965, 972 (10th Cir. 2005)(unpublished)("[I]f the false arrest plaintiff is convicted in the criminal trial for the acts for which he was arrested, probable cause for his arrest is conclusively established and precludes a subsequent civil action for false arrest."); *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006)(plaintiff required to prove absence of probable cause for prosecution to support a *Bivens* claim for malicious prosecution); *Husbands v. City of New York*, 335 Fed.Appx. 124, 128 (2nd Cir. 2009)(unpublished)(existence of probable cause defeated plaintiff's claim for false arrest and malicious prosecution).

Finally, the court finds that plaintiff's claim of slander in Count X fails to state a claim cognizable under § 1983. *See Paul v. Davis*, 424 U.S. 693 (1976)(defamation is not a constitutional violation); *Siegert v. Gilley*, 500 U.S. 226, 234 (1991).

With respect to all plaintiff's claims that appear to be nothing more than state tort law violations, the court finds that plaintiff fails to allege facts demonstrating a violation of any "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." *See* 42 U.S.C. § 1983. It is well-settled that state law violations are not grounds for relief under § 1983. This

court is not obliged to exercise supplemental jurisdiction over any state law claims, even if valid, given that plaintiff's federal constitutional claims must be dismissed. *See* 28 U.S.C. § 1367(c)(3).

## CLAIM AGAINST PROSECUTOR BARRED BY ABSOLUTE IMMUNITY

Plaintiff's claims against defendant D.A. Taylor are dismissed as legally frivolous. Even if plaintiff's claims against Taylor were not barred by the *Younger* abstention doctrine or *Heck*, it is clear that Taylor is absolutely immune from suit for damages under § 1983 for actions taken within the scope of his duties as a prosecutor. S*ee Imbler v. Pachtman*, 424 U.S. 409, 420-24 (1976). Mr. Hachmeister's allegations against this defendant involve acts that are "'intimately associated with the judicial process' such as initiating and pursuing a criminal prosecution." *Snell v. Tunnell*, 920 F.2d 673, 686 (10th Cir. 1990)(quoting *Imbler*, 424 U.S. at 430), *cert. denied*, 499 U.S. 976 (1991). A claim against a defendant who clearly is immune from suit is legally frivolous. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

## HABEAS CORPUS CLAIMS REQUIRE EXHAUSTION OF STATE REMEDIES

As noted, plaintiff's criminal trial concluded since the filing of this action and resulted in his being found guilty of multiple counts of child exploitation. In *Heck*, the Supreme Court reiterated

that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 481 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90, 500 (1973)(when a state prisoner seeks "a determination that he is entitled to immediate release . . . his sole federal remedy is a writ of habeas corpus.")). Moreover, before a state prisoner files a 2254 petition, he must have fully and properly exhausted all remedies available in the courts of the state. *See* 28 U.S.C. 2254(d)(1); *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007)(citation omitted)("The purpose behind *Heck* is to prevent litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions."). Mr. Hachmeister has been represented by counsel in his state criminal proceedings and must work with his counsel to diligently and properly present all the federal constitutional challenges he may have to his state convictions in the Kansas courts prior to seeking relief in federal court.

**OTHER FILINGS**

The court has considered plaintiff's Motion for Temporary Restraining Order and/or Injunctive Relief, which was submitted with

the complaint. This motion is nothing but a supplement the contents of which could and should have been incorporated into the complaint, since plaintiff merely repeats and expands upon his allegations and claims in the complaint. This motion clearly fails to set forth factual allegations establishing the factors that a plaintiff is required to show in order to obtain extraordinary preliminary relief.[13] Accordingly, this motion is denied.

The court has also considered plaintiff's "Motion for ex parte Order to Stay Proceedings" (Doc. 4) that was also submitted with the complaint together with his recent "Supplement" to this motion (Doc. 6). In the initial motion, Mr. Hackmeister alleged that he filed this action "to preserve his claims and avoid the two-year statute of limitations." He then made the puzzling statements that this motion is to stay "the rest of the case" but not his "Motion for Temporary Restraining Order and/or Injunctive Relief" (Doc. 3) and that he only filed this action because his motion would not have been considered without it. The plaintiff also alleged that "it would be in his best interest to focus all energies on" his murder trial and would not be possible for him to amend his complaint if this court so ordered. In addition, he expresses fear that the "local media"

---

13    Plaintiff is reminded that in order to add fact allegations, claims, or requests for relief to a complaint, he must file a complete Amended Complaint. He is also admonished that the numerous pages of legal authorities addressing warrants, searches, and seizures included in his complaint and motion should have been presented, if at all, in a separate legal memorandum; and that exhibits or other evidence should not be sent to the court until he is required to produce evidence.

will talk about this case and further "taint the jury pool" in his murder case.  The court is asked to issue an "ex parte order staying the proceedings in this matter (aside from Motion for Temporary Restraining Order and/or Injunctive Relief) until completion" of his murder trial.

This motion is illogical as plaintiff asks the court to go forward on his motion, but stay his complaint, when they essentially seek the same relief.  Unfortunately, if plaintiff were concerned about adverse publicity arising from orders entered in this action, he should have considered that possibility prior to filing this lawsuit, which became a matter of public record upon filing.  In any event, plaintiff is the only party thus far in this lawsuit and alleges no facts entitling him to either an "ex parte" order or a stay.

**IT IS THEREFORE ORDERED** that plaintiff is given twenty (20) days in which to submit the financial information required by federal law to support his motion to proceed without prepayment of fees.

**IT IS FURTHER ORDERED** that within the same twenty-day period plaintiff is required to show cause why this action should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Temporary Restraining Order and/or Injunctive Relief (Doc. 3) and Motion for Ex Parte Order to Stay Proceedings with Supplement (Docs. 4 & 6) are denied.

**IT IS SO ORDERED.**

Dated this 11th day of February, 2014, at Topeka, Kansas.




                                        **s/Sam A. Crow**
                                        **U. S. Senior District Judge**

**IT IS SO ORDERED.**

Dated this 11th day of February, 2014, at Topeka, Kansas.




                                        **s/Sam A. Crow**
                                        **U. S. Senior District Judge**